# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs July 31, 2013

### IN THE MATTER OF LAKITA E. P. AND MICHAEL A. P.[1]

**Appeal from the Juvenile Court for Clay County**
**No. J307812      Jimmy White, Judge**

_____

### No. M2013-00384-COA-R3-PT - Filed August 28, 2013

_____

A father's parental rights to his two children were terminated on the grounds of abandonment by engaging in conduct exhibiting a wanton disregard for the welfare of the children, non-compliance with the permanency plan, and severe child abuse against children who resided with Father. He appeals, contending that the Department of Children's Services failed to expend reasonable efforts to reunite him with the children and that termination of his rights was not in the children's best interest. Finding no error, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., J., joined. PATRICIA J. COTTRELL, P. J., M. S., not participating.

Joshua Vernon Hoeppner, Livingston, Tennessee, for the appellant, Michael A. P., Sr.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie Curry, Assistant Attorney General, for the Tennessee Department of Children's Services.

### OPINION

#### HISTORY OF THE CASE

Michael A. P., Sr. ("Father") and Erica D. P. H. ("Mother") are the parents of two children, Lakita E. P., born December 29, 2000, and Michael A. P., Jr., born January 31, 2003. The Tennessee Department of Children's Services ("DCS") filed a petition in the Clay County Juvenile Court to have the children dependent and neglected and for temporary legal

_____

[1] This Court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

custody on September 7, 2011.[2] The Clay County petition alleged that beginning on June 24, 2011, DCS had been investigating a referral regarding Mother, alleging lack of supervision and drug exposed children; that Mother had been incarcerated since June 29 and pled guilty to a drug offense for which she had been sentenced to serve four years; that the children were in the custody of an acquaintance of Mother, but that the family with whom the children were residing were not able to care for them; and that the children had been in foster care since August 31, 2011. The court entered a Protective Custody Order on September 7; a hearing was held October 11, at which both parents were present, after which the court entered an order declaring the children to be dependent and neglected, granting continued custody to DCS, and setting a review hearing for December 13. At the review hearing a permanency plan which had been prepared on October 14 was approved by the court. A separate review hearing order was also entered reciting, *inter alia*, that Father remained incarcerated at the Nashville Detention Center completing his sentence for rape of a child and that, because of their incarcerations, DCS was unable to provide services to Mother and Father; the order set the next hearing for September 11, 2012.

An order was entered on November 14, 2012, following the September 11 hearing to consider the permanency plan which had been revised on May 1, 2012. Pertinent to the issues in this appeal, the order determined: that DCS was in substantial compliance with the requirements of the previous permanency plan; that Mother surrendered her parental rights to the children on June 7, 2012[3]; that Father was not in substantial compliance "in that he is now out of prison, he is not compliant with his mental health treatment, he refuses to obtain a psychosexual evaluation, and he is a registered sex offender"; that Father participated in the development of the permanency plan but was not in agreement with the goal of adoption because he wanted to parent the children; that the requirements of the plan were reasonable and related to the remedying the circumstances that brought about the proceeding; and that DCS was relieved of duties to provide reasonable efforts to Father because of his conviction for three counts of aggravated sexual assault of a minor under the age of thirteen. The court approved the May 1 plan.

---

[2] The children had been the subject of an earlier petition to be declared dependent and neglected filed in the Overton County Juvenile Court on December 17, 2009. The Overton County petition alleged, *inter alia*, that Father had been arrested upon an indictment for aggravated sexual battery on December 6, 2009. The children were placed in the temporary protective custody of DCS where they remained until October 7, 2010, when custody was restored to Mother. Mother subsequently moved to Clay County and, by order entered September 7, 2011, the case was transferred to Clay County Juvenile Court; the motion to transfer the case recited that Father remained incarcerated within the Department of Corrections as of September 7, 2011.

[3] The termination of Mother's parental rights to the children are not at issue in this appeal.

The November 24 order also set a hearing for consideration of the petition to terminate Father's parental rights which had been filed by DCS on July 10, 2012. The petition sought to terminate Father's rights on the grounds of abandonment by incarcerated parent (Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(iv)), substantial non-compliance with permanency plan (Tenn. Code Ann. § 36-1-113(g)(2)), and severe child abuse as defined by Tenn. Code Ann. § 37-1-102(23) for which Father was sentenced to more than two years' imprisonment (Tenn. Code Ann. §§ 36-1-113(g)(4) and (5)).

The matter was heard on December 18, 2012 and, following the hearing, the court entered the Final Decree of Guardianship terminating Father's parental rights, stating as grounds the following:[4]

---

[4] In support of the grounds for termination, the court made the following findings of fact, pertinent to the issues in this appeal:

10. Lakita E. P. and Michael A. P. have remained continuously in foster care since 8-31-11.

11. The Respondent, Michael A. P., Sr., has been incarcerated during the four consecutive months prior to the filing of this petition. Michael A. P., Sr. has been incarcerated from 12-7-09 to 6-14-12.

12. The Respondent, Michael A. P., Sr., engaged in such conduct prior to incarceration as to exhibit a wanton disregard for the welfare of the children. Michael A. P., Sr. has been convicted on two counts of Attempted Aggravated Battery of Victims Under 13 Years of Age. The Respondent's conduct in wanton disregard for the welfare of the children was to sexually abuse his niece and nephew, who resided with him at the time of the abuse. Lakita E. P. and Michael A. P. were in Michael A. P., Sr. legal custody at the time of this abuse. Michael A. P., Sr. has a lengthy criminal history.

13. Michael A. P., Sr. was advised on 5-22-12 and 10-17-11 that conduct prior to incarceration in wanton disregard for the welfare of the children was grounds for termination of parental rights. Michael A. P., Sr. signed the acknowledgment of receipt of the Criteria and Procedure for Termination of Parental Rights on 5-22-12 and 10-17-11.

14. Respondent, Michael A. P., Sr., has abandoned Lakita E. P. and Michael A. P. pursuant to Tenn. Code Ann. § 36-1-113(g)(1) and Tenn. 36-1-102(1)(A)(iv) and therefore his parental rights should be terminated.

15. The Respondent, Michael A. P., Sr., has not substantially complied with the provisions of the permanency plans and therefore his parental rights should be terminated pursuant to T.C.A. 36-1-113(g)(2).

16. The initial permanency plan dated 10-14-11 requires him to complete the following requirements that he could have completed while incarcerated: submit to a psycho-sexual examination, follow all recommendations from the psycho-sexual examination, complying with the rules of the facility where he is housed in order to obtain an early release or be able to complete his time without receiving other charges, avoid criminal behavior, read parenting books, participate in a parenting assessment and following recommendations for parenting training. The Court ratified the initial permanency plan on 12-13-11 and found that the plan was reasonable, necessary and in the best interest of the children.

(continued...)

-3-

That [Father] has willfully abandoned the minor children, Lakita E.P. and Michael A.P., Jr., for more than four (4) consecutive months prior to his incarceration; that prior to incarceration he engaged in conduct exhibiting a wanton disregard for the welfare of the children; that he has been substantially non-compliant with the statement of responsibilities in the permanency plans; that he has committed severe child abuse as defined by Tenn. Code Ann. § 37-1-102 against children who resided with [Father] either permanently or temporarily; that he has been sentenced to more than two (2) years' imprisonment for conduct against children who resided with [Father] either permanently or temporarily, which is found to be severe child abuse; and that it is in the best interest of the children that the parental rights of [Father] be forever terminated.

Father appeals, stating the following issues:

A. Did the Clay County Juvenile Court err in finding that the Department of Children's Services made reasonable efforts to reunify the children and the Appellant as required in Tenn. Code Ann. § 37-1-166, so that termination of the Appellant's parental rights was not in the best interest of the minor children at issue in this case?

---

[4](...continued)

17. The revised permanency plan dated 5-1-12 requires him to complete the following requirements that he could have completed while incarcerated: submit to a clinical parenting assessment, successfully complete recommended parenting treatment or education, be supportive of the children's placement, refrain from discussing the case or other family members in a negative manner in front of the children, submit to an alcohol and drug assessment, complete all recommendations from the A&D assessment, submit to a psychological examination, complete all recommendations from the psychological evaluation, and sign releases of information so the department can monitor his progress in these services.

18. The requirements in the permanency plans are all reasonably related to remedying the conditions that necessitate foster care.

19. [Father] has not completed the following requirements in the permanency plans: a psycho-sexual evaluation, sexual offender counseling, an A&D assessment, parenting assessment.

20. The Department made reasonable efforts to assist [Father] in complying with the requirements in the permanency plan by meeting with him to go over his requirements in the permanency plan confirming which services were available to him at the facility where he was housed.

21. Michael A. P., Sr. was advised on 5-22-12 and 10-17-11 that failure to substantially comply with the permanency plans was grounds for termination of parental rights.
***

B. Was the decision of the Clay County Juvenile Court based upon mistake sufficient to satisfy the legal requirements in any other civil action, pursuant to Tenn. Code Ann. § 37-1-139, when the Department of Children's Services presented false evidence at trial that the Appellant was HIV positive?

## STANDARD OF REVIEW

A parent has a fundamental right to the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996). Thus, the state may interfere with parental rights only if there is a compelling state interest. *Nash-Putnam*, 921 S.W.2d at 174–75 (citing *Santosky v. Kramer,* 455 U.S. 745 (1982)). Our termination statues identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re W.B.*, No. M2004-00999-COA-R3-PT, 2005 WL 1021618, at *7 (citing Tenn. Code Ann. § 36-1-113(g)). A party seeking to terminate the parental rights of a biological parent must prove at least one of the statutory grounds for termination. Tenn. Code Ann. § 36-1-113(c)(1); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). Secondly, the party must prove that termination of the parental rights of the biological parent is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(2).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. *Santosky*, 455 U.S. at 766–69; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Thus, both the grounds for termination and the best interest inquiry must be established by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c); *In re Valentine*, 79 S.W.3d at 546. In light of the heightened standard of proof in these cases, a reviewing court must adapt the customary standard of review set forth by Tenn. R. App. P. 13(d). *In re M.J.B.*, 140 S.W.3d 643, 654 (Tenn. Ct. App. 2004). As to the court's findings of fact, our review is *de novo* with a presumption of correctness unless the evidence preponderates otherwise, in accordance with Tenn. R. App. P. 13(d). *Id.* We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Id.*

# DISCUSSION

## I. REASONABLE EFFORTS

We first address Father's contention that the trial court erred in finding that DCS made reasonable efforts to reunify the children with him.[5]

On November 14, 2012, the court entered the annual permanency hearing order in the dependent and neglect proceeding in which the court, *inter alia*, removed the requirement that DCS provide reasonable efforts in light of Father's convictions for three counts of aggravated sexual assault of a minor under the age of thirteen. Father did not appeal that order and has not sought to challenge the order as part of the present appeal. Neither has Father challenged in this appeal the termination of his rights on the ground of severe child abuse pursuant to Tenn. Code Ann. § 36-1-113(g)(4).

Tenn Code Ann. § 37-1-166(g)(4) relieves DCS of the requirement to use reasonable efforts to provide services meeting the needs of the family where, as here, the parent has subjected a child residing in the home to aggravated circumstances, as defined at Tenn. Code Ann. § 36-1-102.[6] Once the court held that Father committed severe child abuse, DCS was excused from making reasonable efforts to reunite the family. Consequently, Father's contention is a non-issue.[7]

---

[5] DCS has "the responsibility to make reasonable efforts to reunify children and their parents after removing the children from their parents' home." *In re Tiffany B.*, 228 S.W.3d 148, 158 (Tenn. Ct. App. 2007) (citing Tenn. Code Ann. § 37-1-166).

[6] Tenn. Code Ann. § 36-1-102(9) defines "aggravated circumstances" to mean "abandonment, abandonment of an infant, aggravated assault, aggravated kidnapping, especially aggravated kidnapping, aggravated child abuse and neglect, aggravated sexual exploitation of a minor, especially aggravated sexual exploitation of a minor, aggravated rape, rape, rape of a child, incest, or severe child abuse, as defined at §37-1-102."

[7] Notwithstanding the fact that DCS was excused from making reasonable efforts to unify Father with the children, we have reviewed the record and determined that it clearly and convincingly shows that the efforts DCS expended in attempting to assist Father were both reasonable and substantial. When the children first came into custody of DCS in 2009 Father was in jail; when they next came into DCS custody in 2011, Father was serving his prison sentence. The case manager from DCS determined what services were available in Father's place of incarceration and discussed with him those services which would lead to reunification with the children. Father failed to take advantage of those services while he was in prison and, upon his release, did not seek DCS' assistance in finding available service providers. As noted in *In re Georgianna H.*, 205 S.W.3d 508, 519 (Tenn. Ct. App. 2006), Father had a responsibility to take reasonable and appropriate efforts to reunify with the children and this record is devoid of any proof that Father complied with his responsibilities. The court did not err in holding that DCS expended reasonable efforts to reunify the children with Father.

(continued...)

## II. FALSE EVIDENCE

Father next argues that relief should be granted from the order of termination pursuant to Tenn. Code Ann. § 37-1-139 because DCS allegedly presented false testimony that Father was HIV positive at the time of trial and on the dates of the offenses for which he was convicted.

Testimony relative to this issue was the following testimony from Father:

> Q. You're HIV positive; is that correct?
> A. Where are you getting this? No, I'm not HIV positive.
> Q. Isn't it true, sir, that you were HIV positive at the time you sexually abused your niece and nephew?
> A. Ma'am, I am not HIV positive.

Ms. Neely also testified as follows:

> Q. To your knowledge is [Father] HIV positive?
> A. To my knowledge, yes.
> Q. In fact, isn't his wife HIV positive?
> A. She is.
> Q. At the time that he offended against his niece and nephew he was HIV positive; is that correct?
> A. To my knowledge.

In the order terminating Father's rights, the court does not make a factual finding that Father was HIV positive; neither does the court reference the testimony in its discussion of the grounds for termination. Father does not explain, other than a reference to "the stigma created by the designation of HIV-positive status," why he considers this to be an issue in this appeal, one which entitles him to relief. There is nothing to indicate that the trial court considered the testimony for any purpose whatsoever. This issue is without merit.

## III. BEST INTEREST

Once a ground for termination has been proven by clear and convincing evidence, the trial court must then determine whether it is the best interest of the child for the parent's rights to be terminated, again using the clear and convincing evidence standard. The legislature has set out a list of factors at Tenn. Code Ann. § 36-1-113(i) for the courts to

---

[7](...continued)

follow in determining the child's best interest.[8]  The list of factors in the statute is not exhaustive, and the statute does not require every factor to appear before a court can find that termination is in a child's best interest.  *See In re S.L.A.*, 223 S.W.3d 295, 301 (Tenn. Ct. App. 2006) (citing *Tenn. Dep't of Children's Servs. v. T.S.W.*, No. M2001-01735-COA-R3-CV, 2002 WL 970434, at *3 (Tenn. Ct. App. May 10, 2002); *In re I.C.G.*, No. E2006-00746-COA-R3-PT, 2006 WL 3077510, at *4 (Tenn. Ct. App. Oct. 31, 2006)).

The trial court made the following findings in support of its determination that termination of Father's parental rights was in the best interest of the children:

> 1.      Michael A. P., Sr. has not made an adjustment of circumstances, conduct or conditions as to make it safe and in the children's best interest to be in the home of the parent.
> 2.      Michael A. P., Sr. has failed to effect a lasting adjustment after reasonable efforts by available social agencies for such duration of time that lasting adjustment does not reasonably appear possible.  While incarcerated, Michael A. P., Sr. had the following services available to him: a psycho-sexual

---

[8]  The factors at Tenn. Code Ann. § 36-1-113(i) are:

In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:
(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;
(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;
(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or
(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

evaluation, sexual offender counseling, an A&D assessment, parenting assessment.

3.     Michael A. P., Sr. has committed brutality, physical, sexual, emotional or psychological abuse or neglect toward other children in the family or household.  He sexually abused his niece and nephew.

4.     Michael A. P., Sr. emotional status would be detrimental to the children and/or prevent him from effectively providing safe and stable care and supervision for the children.

5.     Michael A. P., Sr. has not maintained regular contact with the children through the mail.

6.     Michael A. P., Sr. has shown little or no genuine interest in the welfare of the children.

7.     Michael A. P., Sr. continues to make lifestyle choices that prevent him from being able to parent the children or to provide a home for the children.

8.     The children are placed in a foster home that wishes to adopt the children.

9.     The children have established a strong bond with the foster parents.

10.     The children have expressed a desire to remain in their foster home.

11.     The children's mental health counselor has opined that it is in the children's best interest to establish permanency for the children as soon as possible through adoption.

12.     Lakita E. P. has mental limitations and behavioral issues.  Michael A. P. has depressive and anger management issues.  Both need a stable, structured loving home, which they have with the foster parents.

13.     The children need to be released from the stigma of being foster children.

While the evidence shows that Father completed an anger resolution seminar and a parent training program and that he progressed in acquiring vocational skills while in prison, best interest is viewed from the perspective of the children.  The children have substantial issues related to their mental and emotional development and there is nothing in this record to show that Father can address their needs.  The testimony and other evidence clearly and convincingly supports the trial court's determination.

**CONCLUSION**

Even though Father has not specifically appealed the other grounds upon which his parental rights were terminated, we have reviewed the record and conclude that the evidence supports all grounds of termination.  Accordingly, we affirm the decision of the trial court.

_____
RICHARD H. DINKINS, JUDGE